Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| DLJ MORTGAGE CAPITAL, INC.<br><br>Apelado<br><br><br>V.<br><br><br>IVETTE GONZÁLEZ RODRÍGUEZ<br><br>Apelante | KLAN202500042 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br><br>Caso Núm.:<br>F CD2015-0631<br><br><br>Sobre:<br>Ejecución de Hipoteca In Rem |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de marzo de 2025.

Comparece la señora Ivette González Rodríguez (señora González Rodríguez o apelante) y solicita que revisemos una *Sentencia In Rem* emitida el 18 de octubre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI).[1] En virtud del referido dictamen, el Foro Primario declaró Ha Lugar la *Moción de Sentencia Sumaria* que presentó DLJ Mortgage Capital, Inc. (DLJ o apelado) tras resolver que la apelante incumplió con su obligación de efectuar los pagos mensuales de un préstamo hipotecario. Ante ello, el TPI ordenó proceder con la venta en pública subasta del inmueble otorgado en garantía hipotecaria.

Por los fundamentos que expondremos a continuación, se confirma la determinación apelada.

---

[1] Apéndice de *Apelación*, Anejo 10, págs. 168-184. Archivada y notificada el 25 de octubre de 2024.

**I.**

El caso ante nuestra consideración tuvo su origen el 27 de mayo de 2015, fecha en que DLJ presentó una *Demanda* en cobro de dinero y ejecución hipotecaria en contra de la señora González Rodríguez.[2] En la misma, alegó que la apelante suscribió un pagaré hipotecario a favor de Popular Mortgage, Inc., mediante el cual se le concedió un préstamo por la suma principal de $116,590.00, el cual se garantizó con un inmueble cito en Carolina, Puerto Rico. Sostuvo que, posteriormente, el referido préstamo se modificó. Como parte de sus alegaciones sostuvo que la señora González Rodríguez incumplió con los pagos acordados en el contrato del cual DLJ era tenedor de buena fe. A saber, expresó que al 7 de mayo de 2015, la apelante adeudaba $114,349.32 del principal, el 6.375% de interés acumulable, $121.84 de cargos por mora, $246.98 de *escrow* y $11,659.00 de honorarios de abogado. Por ello, declaró vencido y exigible la cantidad adeudada y solicitó su pago a la señora González Rodríguez. Asimismo, peticionó que, de advenir final y firme la sentencia sin ser satisfecha, se dispusiera su ejecución mediante la venta judicial del inmueble.

El 14 de septiembre de 2016, la señora González Rodríguez presentó una *Contestación a la Demanda*.[3] Mediante esta, apuntó que en marzo de 2013, recibió una carta en la que se le notificó que el pago del préstamo hipotecario se iba a aumentar a $712.34 por el cobro del Centro de Recaudaciones de Ingresos Municipales (CRIM) y de un seguro de inundación, aun cuando el préstamo se modificó para disminuir el pago a $478.00. Ante ello, la apelante indicó que solicitó una investigación. Sin embargo, expuso que, aún sin resolver su reclamación, DLJ presentó la *Demanda* de autos. De otra parte, levantó como defensa afirmativa que el inmueble objeto de ejecución

---

[2] *Íd.*, Anejo 1, págs. 1-23.
[3] *Íd.*, Anejo 2, págs. 24-35.

era su residencia principal, por lo que solicitó someter el caso a un proceso de mediación, de acuerdo con la *Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal*, Ley Núm. 184-2012, según enmendada, 32 LPRA sec. 2882 *et seq.* (*Ley para la Mediación Compulsoria*).

Tras varios trámites procesales, el 5 de diciembre de 2023, DLJ presentó una *Moción de Sentencia Sumaria.*[4] En esta, expuso que no existía controversia sobre que la apelante incumplió con su obligación de pago de la deuda objeto del recurso, la cual estaba vencida, líquida y exigible. De esta forma, acentuó que procedía dictar sentencia sumariamente a su favor y ejecutarla mediante la venta en pública subasta de la propiedad hipotecada mediante el mecanismo *in rem.*

En respuesta, el 10 de abril de 2024, la apelante presentó una *Moción de oposición a solicitud de sentencia sumaria y de desestimación.*[5] Entre otras alegaciones, la señora González Rodríguez indicó que, toda vez que no había examinado el pagaré original, su legitimidad y tenencia de buena fe era un asunto material controvertible que debía estar sujeto al descubrimiento de prueba. A su vez, manifestó que no procedía el mecanismo procesal de sentencia sumaria por existir duda sobre el contenido de una declaración jurada y de una carta de pago. Por otro lado, planteó que DLJ no le ofreció todas las alternativas disponibles en el mercado para evitar la ejecución hipotecaria de su vivienda principal, de acuerdo con las normativas de naturaleza jurisdiccional de la *Ley para Mediación Compulsoria, supra*, la *Real Estate Settlement Procedures Act*, 12 USC 2601 et seq. (RESPA), y la *Ley de Ayuda al Deudor*, Ley Núm. 169-2016, según enmendada, 32 LPRA sec. 2891 *et seq.* La apelante planteó que lo anterior constituyó razón suficiente

---

[4] *Íd.*, Anejo 5, págs. 65-143.
[5] *Íd.*, Anejo 6, págs. 144-159.

para declarar nulo el proceso o llevar a cabo otra mediación compulsoria.

Posteriormente, el 23 de agosto de 2024, DLJ presentó una *Moción para Reiterar Solicitud de Sentencia Sumaria.*[6] El apelado esgrimió que los meros argumentos forenses expuestos por la apelante en torno a las controversias sobre la titularidad del pagaré, el incumplimiento con la obligación de pago y la procedencia de la ejecución hipotecaria carecían de mérito. Por ello, reiteró que la sentencia sumaria a su favor procedía como cuestión de derecho.

Tras dar por sometido el asunto ante su consideración, el 18 de octubre de 2024, el TPI emitió su *Sentencia*[7]. En esta, el TPI formuló las siguientes determinaciones de hechos:

1. El 9 de septiembre de 2010[,] la parte demandada[,] Ivette González Rodríguez otorgó un pagaré a favor de Popular Mortgage, Inc. o a su orden por la cantidad de $116,590.00 más intereses desde esa fecha hasta el pago total del principal a razón de 6 3/8% de interés anual sobre el balance adeudado[,] más otros cargos accesorios.
2. El referido pagaré fue garantizado por una Hipoteca voluntaria, constituida mediante la Escritura Núm. 447 otorgada el 9 de septiembre de 2010 ante [el] Notario Público Héctor M. Lúgaro Figueroa [sobre una propiedad inmueble] [...]
3. El dominio sobre la propiedad en cuestión actualmente consta inscrito a favor de la parte demandada[,] Ivette González Rodríguez.
4. La Escritura de Hipoteca garantiza: (a) el pago de la deuda evidenciada por el pagaré con sus intereses; (b) una cantidad adicional igual al diez por ciento (10%) de la suma original del principal del pagaré para cubrir costas, gastos y honorarios de abogados, en caso de reclamación judicial, (c) una cantidad adicional igual al diez por ciento (10%) de la suma original del principal del pagaré para cubrir cualquier otro adelanto que pueda hacerse bajo esta hipoteca; y (d) una cantidad adicional igual al diez por ciento (10%) de la suma original del principal del pagaré para cubrir intereses por encima de los garantizados por ley.
5. La parte demandada se comprometió en el contrato hipotecario a pagar el seguro de propiedad y las contribuciones sobre la propiedad además de otros cargos e imposiciones atribuibles a la misma.
6. El 29 de agosto de 2012[,] la parte demandada y el acreedor hipotecario original Popular Mortgage, Inc., otorgaron una Escritura de Modificación y Ampliación de Hipoteca, Escritura [Núm.] 145 ante la Notario Público Sandra M. Lugo [Andújar].
7. En virtud de dicha escritura, las partes ampliaron el principal adeudado a la suma de $118,182.70,

---

[6] *Íd.*, Anejo 7, págs. 160-161.
[7] *Íd.*, Anejo 10, págs. 168-184. Archivada y notificada el 25 de octubre de 2024.

modificaron el interés aplicable de forma escalonada[,] según se desprende de la Sección OCTAVA (b) y pactaron que el tipo mínimo para la primera subasta en caso de ejecución sería la suma de $118,182.70.

8. El referido pagaré fue endosado al portador y la parte demandante[,] DLJ es la sucesora en derecho y tenedora por valor recibido y de buena fe de dicho Pagaré.

9. La parte demandada incumplió con los términos pactados, a pesar de las gestiones de cobro de la parte demandante.

10. Para la fecha de la presentación de la Demanda de epígrafe, 27 de mayo de 2015, la deuda de la parte demandada por concepto del referido préstamo, ascendía a la cantidad de $114,349.32 por concepto de principal más intereses y otros créditos accesorios.

11. Luego de la presentación de la demanda, la parte demandada participó en planes de repago a través de mitigación de pérdidas (*Loss Mitigation*) y los pagos realizados fueron aplicados parcialmente a la deuda.

12. Al día de hoy, la deuda de la parte demandada por concepto del préstamo asciende a $111,730.22 por concepto de principal más intereses al tipo pactado de 6.375% anual desde el 1 de abril de 2016, hasta realizarse el pago total de la deuda. Además, la parte demandada adeuda cargos por demora equivalentes a 5.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendario de la fecha de vencimiento; una cantidad equivalente al 10% de la suma original del pagaré para cubrir los créditos accesorios y adelantos hechos en virtud de la escritura de hipoteca; una cantidad equivalente al 10% de la suma original del pagaré para cubrir las costas, gastos y honorarios de abogado; y una suma equivalente a 10% de la suma original del principal del pagaré para cubrir intereses en adición a los garantizados por ley.

13. La parte demandante en diversas ocasiones le ha requerido el pago de la cantidad adeudada a la parte demandada, sin éxito alguno.

El Foro apelado consignó que, de los hechos incontrovertidos y la evidencia sometida, se desprendió que la señora González Rodríguez dejó de cumplir con su obligación de pago del préstamo en cuestión, por lo que DLJ estaba facultado a reclamar la deuda mediante la *Demanda* y de ejecutar la correspondiente sentencia. A su vez, estableció que las partes participaron del proceso de mediación compulsoria y realizaron esfuerzos de mitigación de pérdidas, sin lograr un acuerdo de transacción para finalizar el pleito.

Por otro lado, el TPI reconoció que, en vista de que la apelante recibió el descargo de la deuda personal relacionada con el préstamo en un caso de quiebra en el Tribunal Federal, únicamente le respondía a DLJ con el inmueble hipotecado, es decir, una ejecución *in rem*. Así las cosas, concluyó que el apelado tenía un gravamen hipotecario válido de primera hipoteca sobre el inmueble de la señora

González Rodríguez que garantizaba el pago de las sumas adeudadas. Por ello, declaró Ha Lugar la solicitud de DLJ en dictar sentencia sumaria a su favor y ordenó la venta en pública subasta del inmueble.

Inconforme, el 1 de noviembre de 2024, la señora González Rodríguez solicitó determinaciones de hechos adicionales, conclusiones de derecho y una reconsideración.[8] La apelante expresó que, a pesar de que el TPI reconoció que las partes participaron en un proceso de mediación compulsoria sin alcanzar un acuerdo, desatendió su planteamiento de que DLJ no le ofreció todas las alternativas de mitigación de pérdidas. Ante ello, señaló que el incumplimiento con la naturaleza jurisdiccional de la *Ley para Mediación Compulsoria, supra,* la RESPA, *supra,* y la *Ley de Ayuda al Deudor, supra,* vició de nulidad el procedimiento y la *Sentencia* emitida por el TPI. Cónsono con lo anterior, precisó que el Foro *a quo* estaba obligado a celebrar una vista por su invocación de nulidad del procedimiento, de conformidad con la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2. Por último, la apelante reiteró que la falta de examen del pagaré original creó duda sobre su tenencia de buena fe y sobre la escritura de constitución de la hipoteca.

Por otro lado, la señora González Rodríguez indicó que el TPI debía acoger las siguientes determinaciones de hechos adicionales.

1. La parte demandada fue empleada de Banco Popular de Puerto Rico[,] División de Ejecución de Hipoteca y [hacía] cierre de préstamos.
2. El préstamo objeto de los procedimientos del caso de marras fue incluido en una venta a granel de 3,000 préstamos a Credit Suisse. En craso incumplimiento con la notificación a la parte demandada y craso incumplimiento con la Sección 2-306 de la Ley de Transacciones Comerciales[,] según enmendada, 19 LPRA sec. 606.
3. En el 2014[,] Select Portfolio Services ("SPS") comienza a hacer gestiones de [c]obro por [$]712.03 de pago mensual[.] [Ninguno] de ellos (Credit Suisse, DLJ MORTGAGE [CAPITAL], INC. o SPS) tienen oficinas en Puerto Rico, aunque aparecen registrados en el Departamento de Estado. La demandante [llamó] al Banco Popular y se le hizo llegar evidencia de seguros *Flood* con Mapfre y Hazard con Banco Popular como agente de seguros y exención del CRIM.

---

[8] *Íd.,* Anejo 11, págs. 185-211.

4. Para noviembre del 2014, la demandante hizo una reinstalación, su esposo había fallecido en agosto 23 de 2014 y perdió su trabajo en octubre de 2014. Analizó el historial de pago y encontró 3 pagos de $956.00 mal aplicados y 7 pagos aplicados a base de $712.03. La demandante radicó una reclamación por estos pagos y le indicó que tienen que reversar los pagos incorrectos y aplicarlos correctamente, cuando los pagos son aplicados correctamente se cubre P & I más el *escrow*. SPS se ha negado a reversar los pagos y la demandante le notificó que están violando los términos de su modificación "*Step Rate*". El Sr. Cardona de SPS fue el único que se preocupó por investigar y se dio cuenta del error e investigó. Se le indicó a la demandada que tenía que esperar hasta julio de 2015 para el análisis de "*escrow account*". En mayo de 2015 incoaron [la] demanda sin resolver la reclamación de revisar los pagos y aplicarlos correctamente porque de haberlos corregido la aplicación de pago se podía aplicar a más mensualidades.

5. Que hay varias demandas de clase[,] una por la imposición de seguros donde SPS está cobrando una comisión lo que confirma la insistencia del seguro de inundación por 220,000.00 dólares sobre la propiedad objeto del litigio.

6. Que hay violaciones al "*Fair Debt Collection Act*" ("FDCPA")[,] gestiones fraudulentas al querer cobrar y no desglosar mensualidades y números correctos del préstamo.

7. Que SPS prometió honrar la modificación de Banco Popular después de cumplir con el periodo de prueba "Trial", pero terminó con unos intereses donde pretender llevarlo hasta 7.5% cuando el préstamo [original] al 6.38% y ninguna alternativa de modificación en [el proceso de] mitigación de pérdidas puede exceder los términos del préstamo original y la demandada terminaba pagando casi 500,000.00 dólares por un préstamo de 118,000.00 [dólares].

8. Que dicha modificación establece lo siguiente: comenzando [el] 1 de octubre de 2012 hasta [el] 1 de septiembre de 2052[.]

| Pagos | P&I | Interés | "*Escrow*" | Pago mensual |
|---|---|---|---|---|
| 1 al 60 | 389.74 | 2.50% | 88.26 | 478.00 |
| 61 al 72 | 450.57 | 3.50% | 88.26 | 538.83 |
| 73 al 85 | 514.48 | 4.50% | 88.26 | 602.74 |
| 85 al 96 | 580.99 | 5.50% | 88.26 | 669.25 |
| 97 al 480 | 640.88 | 6.38% | 88.26 | 729.14 |

9. Que SPS[,] siendo un servidor de préstamos ("*lender servicer*") de la parte demandante[,] alteró los términos del préstamo. Los *Settlement Statement* del préstamo desglosan claramente cuánto se paga en P&I[,] más los seguros en el "*escrow*", "*flood*" y "*Hazard*"

10. Que SPS[,] siendo un servidor de préstamos ("*lender servicer*") de la parte demandante[,] cobró seguros y gastos no [previstos] en el préstamo como tal, sobregirando la cuenta de "*escrow*" del préstamo. Que aumentó el pago mensual de "*escrow*" entre $200.00 y $300.00 sin tener una justificación v[á]lida y con pruebas.

11. Que la parte demandada compareció a la vista de Mediación el 15 de noviembre de 2021 con la mediadora Dalia Domínguez González y la representante de "Select Portfolio Services" ("SPS"). SPS es el Servidor de la parte demandante. La demandada se encontraba en una prueba (trial) para modificación con SPS desde el 1 de julio de 2021 al 1 de enero de 2022; que no fue notificado al tribunal, a la mediadora y menos a su representante de mediación en Puerto Rico.

12. Ni la Sra. Dalia Domínguez, ni la representante de SPS, (no es representante de la parte demandante) tuvieron oportunidad de revisar el expediente y ver que existía una reclamación sin resolver por parte de SPS.

13. Se notificó a la representante de SPS que ellos radicaron [una] demanda sin resolver una reclamación que[,] a la fecha de hoy[,] no se ha resuelto, ya que se niegan a reversar los pagos aplicados en la reinstalación del 6 de noviembre de 2014 y que ellos justifican se trató de un seguro de inundación por el valor de [$]220,000.00, que SPS quería imponer para cubrir el préstamo cuando el valor de la propiedad era de $95,000.00.

14. En la vista de mediación del 15 de noviembre de 2021[,] la representante de SPS se levantó, [consultó] con la oficina de SPS y optó por irse de la vista de mediación. En un craso incumplimiento con la naturaleza jurisdiccional de la Ley Núm. 184-2012, RESPA y la Ley Núm. 169-2016. Lo aquí dispuesto será un requisito jurisdiccional en los procesos a llevarse a cabo ante los Tribunales de Puerto Rico que envuelvan un proceso para la ejecución de una hipoteca garantizada con una propiedad [residencial] que constituya una vivienda personal del deudor o de los deudores sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial de la propiedad gravada con la hipoteca cuya ejecución se solicita. De no presentarse el acreedor hipotecario, al procedimiento de mediación, en cualquiera de sus etapas, sin que medie justificación adecuada, o de no actuar de buena fe en cuanto al ofrecimiento de alternativas disponibles, impidiendo que se alcance un acuerdo viable con el deudor, el Tribunal procederá a desestimar la demanda presentada.

15. La parte demandada había consultado con la compañía de seguros Mapfre[,] quien notificó que ninguna agencia de seguro puede asegurar una propiedad por encima del valor, notificándole así a la parte demandante. Con la reinstalación de noviembre del 2014, SPS pudo haber pagado [un] seguro de inundación durante ese año confirmando con la directora del Departamento de Seguro [para] ese año.

16. La parte demandada presentó [una] investigación con la Oficina para la Protección Financiera del Consumidor ("CFPB") y la misma SPS admite los hechos antes mencionados en su declaración [...]

17. Que hay pendiente una investigación ante la Corporación Federal de Seguro de Depósitos ("FDIC") [...]

18. Que hasta [el] 1 de octubre de 2017 no debía cambiar el pago mensual y solo se pagaba seguro Hazard $252.00 dividido en 12 meses es igual a $21.00 y Seguro de inundaciones [a] $852.00[,] dividido en 12 meses es igual a $71.00 totalizando un pago mensual en "*escrow*" de $92.00 no más de $100.00.

19. Que el 6 de noviembre de 2014 se realizó una reinstalación con sobre $6,420.38; cobrando a $712.03 mensual como SPS no daba una justificación razonable para dicho aumento, en diciembre de 2014 se le solicitó que el dinero de pago por demás le fuera acreditado a la mensualidad de diciembre, a ver que aún continuaban cobrando el pago de Diciembre 2014 por $712.00; se le notificó que estaban violando los acuerdos de modificación y se le solicitó que investigaran y corrigieran los números de su cuenta mientras le estaban ofreciendo una modificación. Esta[,] sin resolver su alegación.

20. Aún sin resolver su alegación. La parte demandante procedía a presentar la demanda en el caso de marras. Durante el 2014 al 2015 le dieron 3 diferentes pagos

mensuales ($490.00, $712.00 y $520.00). Aplicaron pagos al "*escrow*" de $322.60 dólares y no hay ninguna justificación para el aumento del "*escrow*", lo cual no han querido reversar los pagos. SPS se enriqueció injusta e ilegalmente de las comisiones en la venta de seguros, [razón] por la cual nos basamos en que los números y fechas no concuerdan con la modificación estipulada y debidamente registrada con Banco Popular y a los que el SPS y la parte demandante han violado [e] incumplido con lo estipulado en la compraventa de préstamos en el mercado secundario por lo que la parte demandante no cumplió con lo ya establecido.

21. SPS no pagó el seguro de inundaciones. El mismo fue sometido por personal de Banco Popular, división de Seguros y Mapfre y dicho pago nunca se realizó y fue aceptado por la supervisora del área de seguros, que para el 2015 no tuvo seguros de inundación en su propiedad. Cuando con la reinstalación de 2014, habían recaudado los ($832.00) fondos (automáticamente se pone al día la cuenta de reserva y "*escrow*" y continuaron pagando el seguro de Hazard). Continuaron pagando póliza de Hazard y no pagaron la de "*Flood*" por querer imponer [la] póliza de 220,000.00 dólares y SPS agenciarse comisiones injustas e ilegales.

22. La parte demandante ni SPS no tienen ni han tenido en algún momento intenciones reales y de buena fe para llegar a un acuerdo con la parte demandada. *Better Business Bureau* no ha acreditado a SPS la cual ha tenido un sin número de querellas por prácticas ilegales en cobros de comisiones por venta de seguros. En los Estados Unidos existen actualmente varias demandas de Clase por irregularidades de DLJ MORTGAGE [CAPITAL], INC. Credit Suisse y SPS con préstamos hipotecarios y tampoco están acogidos al FDIC.

23. La parte demandante y SPS tienen la intención de cortar la vida del préstamo de 480 a 295 meses y pretenden un "*balloon payment*" de $76,992.40 cobrando un balance de $375,746.45 sobre una propiedad que su valor en el mercado es 95 mil y sobre un balance de 111,730.22; cuando muy bien si tuvieran intenciones de resolver pueden modificar el préstamo por 360 meses, ya que no han permitido a la demandada continuar con los pagos de la modificación previa por estar alterando los números de la cuenta de "*escrow*" y pagos mensuales desde el marzo de 2014, causándole angustias por años a la parte demandada, por el mal manejo del préstamo desde que la parte demandante adquirió el instrumento negociable objeto del caso de marras.

Por su parte, el 20 de noviembre de 2024, DLJ presentó una *Oposición a Moción de Reconsideración*.[9] Mediante esta, arguyó que la señora González Rodríguez se limitó a alegar, sin fundamento alguno, que existía controversia sobre su legitimidad como tenedor del pagaré y que necesitaba inspeccionar el pagaré original. Además, adujo que la apelante, sin presentar una declaración jurada o evidencia, planteó que estaba en controversia si se cumplió con las disposiciones de la

---

[9] *Íd.*, Anejo 13, págs. 213-215.

RESPA, *supra,* previo a iniciar la acción de ejecución hipotecaria. No obstante, DLJ sostuvo que presentó evidencia admisible para apoyar la sentencia sumaria a su favor y que la señora González Rodríguez incumplió con los requisitos de la Regla 36 (b) de Procedimiento Civil, *supra,* R. 36 (b). Subrayó que la apelante se circunscribió a presentar argumentos forenses que resultaron insuficientes para controvertir los hechos, refutar los argumentos de derecho y derrotar la procedencia de la sentencia sumaria.

Tras examinar los alegatos de ambas partes, el 3 de diciembre de 2024, el TPI emitió una *Orden* en la que declaró No Ha Lugar a la solicitud de la apelante de exponer determinaciones de hechos adicionales, conclusiones de derecho y la moción de reconsideración.[10]

No conforme con la determinación del TPI, la señora González Rodríguez presentó una *Apelación,* en la que esbozó que el TPI incidió en cometer los siguientes errores:

A. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DICTAR SENTENCIA SUMARIA, MEDIANTE LA CUAL ADOPTA LA ARGUMENTACIÓN DE LA MOCIÓN DE SENTENCIA SUMARIA DE LA PARTE APELADA Y DESATIENDE LOS HECHOS MATERIALES SUSTANCIALES Y CONTROVERTIDOS QUE LA PARTE APELANTE DISCUTE Y FUNDAMENTA EN SU OPOSICIÓN A SENTENCIA SUMARIA.

B. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DICTAR SENTENCIA SUMARIA EN ESTE CASO Y OMITIR LOS HECHOS MATERIALES SUSTANCIALES CONTROVERTIDOS IDENTIFICADOS POR LA PARTE APELANTE EN SU MOCIÓN DE RECONSIDERACIÓN, A LA LUZ DE LA REGLA 43.1 DE LAS DE PROCEDIMIENTO CIVIL, 32 LPRA AP. V. R. 43.1, LA FALTA DE EXAMEN FÍSICO DEL PAGARÉ ORIGINAL DE ESTE CASO Y LA AUSENCIA DE EVIDENCIA EN CUANTO AL OFRECIMIENTO POR LA PARTE APELADA A LA PARTE APELANTE DE TODAS LAS ALTERNATIVAS DE MITIGACIÓN DE PÉRDIDAS EN CONTRAVENCIÓN DEL ORDENAMIENTO ESTATAL Y FEDERAL.

En esencia, la apelante reiteró que DLJ no le ofreció todas las alternativas de mitigación de pérdidas, en contravención con el requisito jurisdiccional de la *Ley para Mediación Compulsoria, supra,*

---

[10] *Íd.,* Anejo 14, págs. 216-217.

la RESPA, *supra*, y la *Ley de Ayuda al Deudor, supra*. Ante ello, manifestó que el procedimiento de este caso estaba viciado de nulidad absoluta, por lo que ambas partes debían ser relevadas de la *Sentencia*, conforme con la Regla 49.2 de Procedimiento Civil, *supra*, R. 49.2.

Por otra parte, acentuó que al no examinar el pagaré original, se creó duda legítima sobre su tenencia de buena fe y sobre la escritura de constitución de hipoteca. Esto, al exponer que la Sección 2-306 de la *Ley de Transacciones Comerciales*, según enmendada, 19 LPRA sec. 606, obligaba al acreedor hipotecario a demostrar fehacientemente la tenencia con buena fe del instrumento negociable en su poder.

Asimismo, señaló que el Foro Primario desatendió la discusión sobre su solicitud de hechos adicionales, al amparo de la Regla 43.1 de Procedimiento Civil, *supra*, R. 43.1. Por ello, subrayó que existían hechos materiales, sustanciales y controvertidos impedían disponer del caso sumariamente.

El 13 de febrero de 2025, DLJ presentó una *Oposición a Apelación.* En esta, expuso que demostró, mediante evidencia admisible, que la señora González Rodríguez incumplió con el contrato de préstamo al dejar de pagar las mensualidades vencidas. Ante ello, indicó que estaba facultada a ejecutar la sentencia mediante un mandamiento de ejecución. Por cuanto, adujo que el TPI actuó correctamente al declarar Ha Lugar la *Moción de Sentencia Sumaria* y dictar sentencia de ejecución *In Rem* a su favor. A su vez, arguyó que la apelante incumplió con la Regla 36 (b) de Procedimiento Civil, *supra*, R. 36 (b) para oponerse a la sentencia sumaria y se limitó a alegar, sin evidencia, controversias sobre su legitimidad como tenedor del pagaré, la inspección del pagaré original y el incumplimiento con las disposiciones del RESPA, *supra*.

En atención a los errores señalados por la apelante, procedemos a exponer la normativa jurídica aplicable a este recurso.

## II.

### A. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. *Cruz, López v. Casa Bella y otros, supra*; *Banco Popular v. Posada*, 2024 TSPR 62, 213 DPR ___ (2024); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); véase, además, Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. La controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión, supra*. En otras palabras, la controversia debe ser de calidad suficiente para que sea necesario que el juzgador la dirima mediante un juicio plenario. *Íd.*

Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), establece que procede dictar una moción de sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas u otra evidencia demuestran que no existe una controversia real sustancial en torno a un hecho esencial y pertinente. Véase, además, *Birriel Colón v. Econo y otro, supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Ahora bien, no es aconsejable dictar sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o sobre aspectos

subjetivos como la intención, el propósito mental o la negligencia. *Cruz, López v. Casa Bella y otros, supra; Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021). Resulta importante que "[l]os tribunales, al examinar una moción de sentencia sumaria y declararla no procedente por alegadamente contener elementos subjetivos o de credibilidad, deben asegurarse que estos elementos sean un ingrediente esencial en la resolución de la controversia ante su consideración". *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009). Así, aun cuando se deben evaluar los elementos subjetivos o de intención, no se impide la utilización de la sentencia sumaria si de los documentos se desprende la inexistencia de una controversia real y sustancial sobre los hechos materiales. *Ramos Pérez v. Univisión, supra*, pág. 219; *Birriel Colón v. Econo y otro, supra*, pág. 91. Véase también Regla 36.3 (e) de Procedimiento Civil, *supra*, R. 36.3 (e). Por tanto, procede dictar sentencia sumaria cuando el juzgador está claramente convencido de que tiene ante sí todos los hechos materiales de forma no controvertida y es innecesario celebrar una vista en los méritos. *Birriel Colón v. Econo y otro, supra.*

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales con evidencia sustancial. *SLG Fernández-Bernal v. RAD-MAN et al., supra*, págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones, sino que debe contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. *Birriel Colón v. Econo y otro, supra; Ramos Pérez v. Univisión, supra*, pág. 215; Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c). Sin embargo, la ausencia de prueba para refutar la evidencia presentada no conduce a la concesión automática de una moción de sentencia sumaria. *Birriel Colón v. Econo y otro, supra; SLG Fernández-Bernal v. RAD-MAN et al., supra*, pág. 337.

En *Meléndez González et al. v. M. Cuebas, supra*, el Tribunal Supremo estableció un estándar que este Tribunal de Apelaciones debe emplear al revisar las concesiones o denegatorias de una solicitud de sentencia sumaria.

En primer lugar, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar una solicitud de sentencia sumaria, por lo que está llamado a realizar una revisión *de novo*, conforme con la Regla 36 de Procedimiento Civil, *supra*, R. 36. En tal ejercicio, no se puede considerar evidencia que no se presentó ante el Foro *a quo*, y se debe examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra*, pág. 116.

En segundo lugar, el Tribunal de Apelaciones debe revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*, R. 36 y los criterios discutidos en los casos *SLG Zapata- Rivera v. J.F. Montalvo, supra* y *Meléndez González et al. v. M. Cuebas, supra*.

En tercer lugar, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. *Íd.* De haberlos, se debe exponer los hechos materiales en controversia y los incontrovertidos, a tenor con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Véase *Meléndez González et al. v. M. Cuebas, supra*.

En cuarto lugar, si el Tribunal de Apelaciones determina que no existen hechos materiales en controversia, procederá a revisar si el Foro Primario aplicó correctamente el derecho. *Íd.*, pág. 119.

### B. Determinaciones de hechos adicionales

Una persona adversamente afectada por una sentencia tiene la facultad para presentar una moción solicitando determinaciones iniciales o adicionales de hechos o conclusiones de derecho, al amparo de la Regla 43 de Procedimiento Civil, *supra*, R. 43. *SLG Szendry-Ramos v. F. Castillo*, 169 DPR 873, 879-880 (2007). La razón

principal para solicitar determinaciones adicionales es que el juzgador quede satisfecho en que atendió todas las controversias, a la vez que permite que los foros apelativos estén completamente informados sobre la base decisiva. *Íd., citando a* J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Puerto Rico, Publicaciones JTS, 2000, T. I, pág. 695. A su vez, permite que los foros apelativos estén informados sobre los fundamentos de la determinación del tribunal de instancia. *Morales y otros v. The Sheraton Corp.*, 191 DPR 1, 10 (2014). Ahora bien, las partes no pueden utilizar este mecanismo procesal para introducir prueba o traer una nueva teoría. *Morales y otros v. The Sheraton Corp., supra.*

La Regla 43.1 de Procedimiento Civil, *supra*, R. 43.1, dispone lo siguiente:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación, pero a moción de parte, presentada a más tardar quince (15) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes si éstas no se hubiesen hecho por ser innecesarias, de acuerdo con la Regla 42.2, podrá enmendar o hacer determinaciones adicionales o podrá enmendar la sentencia en conformidad. Si una parte interesa presentar una moción de enmiendas o determinaciones iniciales o adicionales, reconsideración o de nuevo juicio, éstas deberán presentarse en un solo escrito y el tribunal resolverá de igual manera. En todo caso, la suficiencia de la prueba para sostener las determinaciones podrá ser suscitada posteriormente aunque la parte que formule la cuestión no las haya objetado en el tribunal inferior, no haya presentado una moción para enmendarlas o no haya solicitado sentencia.

Importante es que una mera solicitud al amparo de la Regla 43.4 de Procedimiento Civil, *supra*, R. 43.3, no obliga a que el tribunal de primera instancia formule determinaciones de hechos adicionales. *Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 26 (2011). Pues, la utilización de la palabra "podrá" le imparte un carácter discrecional a la formulación de determinaciones de hechos y de derechos adicionales. *Blas v. Hosp. Guadalupe*, 146 DPR 267, 319 (1998). Además, "el juez de instancia al examinar la solicitud generalizada de una parte no podía hacer determinaciones de hechos adicionales que

pudieran estar en contradicción con las determinaciones de hechos ya formuladas que están avaladas por la prueba desfilada ante sí, o en oposición a sus propias conclusiones de derecho apoyadas en los hechos debidamente probados". *Constructora Estelar v. Aut. Edif. Púb., supra.* En tal sentido, si bien este mecanismo permite que el Foro Primario rectifique cualquier error, no está obligado a hacer determinaciones de hechos y de derecho adicionales de considerar que las mismas no proceden. *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 357 (2003).

### C. Relevo de sentencia

Por otro lado, toda sentencia dictada por un tribunal goza de una presunción de validez y corrección. *Oriental Bank v. Pagán Acosta y otros*, 2024 TSPR 133, 215 DPR ___ (2024). Sin embargo, "existen circunstancias particulares en las que 'nuestro ordenamiento procesal civil permite a una parte solicitar el relevo de los efectos de una sentencia previamente dictada en su contra'". *Íd.*, *López García v. López García*, 200 DPR 50, 59 (2018).

En tal sentido, la Regla 49.2 de Procedimiento Civil, *supra*, R. 49.2, rige lo concerniente a la facultad de los tribunales para dejar sin efecto una sentencia u orden suya por causa justificada. *Piazza v. Isla del Río, Inc.*, 158 DPR 440, 448 (2003). El peticionario del relevo de sentencia tiene la obligación de justificar su solicitud al amparo de uno de los motivos establecidos en la aludida regla. *Pérez Ríos y otros v. ELA y otros*, 213 DPR 203, 215 (2023). En específico, la Regla 49.2 de Procedimiento Civil, *supra*, R. 49.2, dispone lo siguiente:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
> (a) error, inadvertencia, sorpresa o negligencia excusable;
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

(d) nulidad de la sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Las disposiciones de esta regla no aplicarán a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (c) o (d). La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:

(1) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;

(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal.

Mientras esté pendiente una apelación o un recurso de certiorari de una resolución final en procedimiento de jurisdicción voluntaria, el tribunal apelado no podrá conceder ningún remedio bajo esta regla, a menos que sea con el permiso del tribunal de apelación. Una vez que el tribunal de apelación dicte sentencia, no podrá concederse ningún remedio bajo esta regla que sea incompatible con el mandato, a menos que se obtenga previamente permiso para ello del tribunal de apelación. En ambos casos, la moción de relevo deberá siempre presentarse ante el tribunal apelado dentro del término antes señalado, y si éste determina que estaría dispuesto a conceder el remedio, se acudirá entonces ante el tribunal de apelación para solicitar el referido permiso.

El relevo de sentencia es una facultad discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. *García Colón et al. v. Sucn. González*, 178 DPR 527, 540 (2010); *Pérez Ríos y otros v. ELA y otros, supra.* En tal eventualidad, resulta mandatorio declarar su inexistencia jurídica, independientemente de los méritos que pueda tener el perjudicado o si se presentó posterior a expirar el término de seis (6) meses. *Íd.*; *HRS Erase v. CMT*, 205 DPR 689, 699 (2020). Una sentencia es nula cuando se dictó sin jurisdicción o se quebrantó el debido proceso de ley. *Íd.* Una falta en el debido proceso de ley hace que una sentencia sea nula sólo cuando efectivamente se afecta el derecho de la parte, mediando un análisis de equidad. *Piazza v. Isla del Río, Inc., supra,* pág. 477.

Por otra parte, no es mandatorio celebrar una vista cuando una parte invoca el relevo de una sentencia al amparo de la Regla 49.2 de

Procedimiento Civil, *supra*, R. 49.2, si de la faz de la petición es evidente que carece de méritos. *Ortiz Serrano v. Ortiz Díaz*, 106 DPR 445, 449 (1977). Pues, sería contrario con el principio de garantizar una solución justa, rápida y económica en todo procedimiento. *Íd.* No obstante, la celebración de una vista será obligatoria cuando el peticionario invoque razones válidas que requieran la presentación de prueba para sustentarlas. *Íd.*

### D. Ejecución hipotecaria

Una hipoteca es "un derecho real que sujeta o vincula lo hipotecado a que eventualmente su titular pueda exigir la realización de su valor, así como tomar medidas para salvaguardarlo, en seguridad o garantía de la efectividad de alguna obligación dineraria". *Banco Popular v. Registrador*, 181 DPR 663, 673 (2011). Una de las características de las hipotecas es que son accesorias, ya que la hipoteca sirve de garantía para el acreedor de la obligación principal asegure su crédito ante el incumplimiento con la deuda. *Liechty v. Desartés Saurí*, 109 DPR 496, 501-502 (1980). Es decir, el titular del derecho real posee la facultad de recobrar lo adeudado mediante la enajenación de la cosa dada en garantía de su crédito, tal como el deudor consintió al otorgar el contrato de hipoteca. *Íd.*

El titular del derecho real posee esta facultad de enajenar la garantía sin importar que el poseedor sea una tercera persona. L. R. Rivera Rivera, <u>*Derecho Registral Inmobiliario Puertorriqueño*</u>, 3ra ed., San Juan, Ed. Jurídica Editores, 2012, pág. 485. A saber, una vez vencido el crédito hipotecario en todo o en parte sin que sea satisfecho por el deudor, el acreedor tiene derecho a ejercer los mecanismos que le provee el ordenamiento jurídico para satisfacer el crédito hipotecario, como el procedimiento sumario y ordinario ejecución hipotecaria. *Íd.*, págs. 567-568.

### E. Mediación compulsoria

Mediante la *Ley para Mediación Compulsoria, supra,* se creó un proceso de mediación compulsoria en los procesos de ejecución hipotecaria de una vivienda principal en Puerto Rico. Para fines de este estatuto, la vivienda principal es aquella que se utiliza como hogar principal y que para fines contributivos es la primera residencia.

Se debe tener en cuenta que la mediación compulsoria es un requisito jurisdiccional en ciertos casos de ejecución de una hipoteca. *Franklin Credit v. George Riviello,* 209 DPR 555, 565 (2022); *Bco. Santander v. Correa García,* 196 DPR 452, 471-472 (2016). Es decir, de incumplirse con este requisito, el tribunal no podrá dictar sentencia ni ordenar la venta judicial de un inmueble que se utiliza como residencia principal. *Íd.* En tales casos, el tribunal tiene la obligación de señalar una vista de mediación compulsoria. *Íd.* El Artículo 3 de la *Ley para Mediación Compulsoria, supra,* sec. 2882, establece que cuando el acreedor inicia una acción sobre ejecución hipotecaria, el deudor tiene derecho a que se celebre una vista de mediación compulsoria en la que se le informe todas las alternativas disponibles en el mercado para evitar la ejecución de su inmueble, incluyendo aquellas alternativas que no dependen de la capacidad económica del deudor. *Íd.* Esto, mientras el deudor no se encuentre en rebeldía o sus alegaciones no hayan sido eliminadas por el tribunal. *Íd.*

Dicho estatuto no le impone al acreedor la obligación de llegar a un acuerdo con el deudor, sino a notificarle todas las alternativas disponibles para evitar la ejecución de su vivienda principal, actuando de buena fe. *Oriental Bank v. Caballero García,* 212 DPR 671, 682 (2023); *Scotiabank v. SLG Rosario-Castro,* 205 DPR 537, 558-559 (2020).

Ahora bien, la *Ley para Mediación Compulsoria, supra,* exige que se emita un señalamiento o citación para celebrar una vista de

mediación. *Bco. Santander v. Correa García, supra,* pág. 473. Sin embargo, la extensión de este procedimiento y su resultado dependerá de la conducta de las partes. *Íd.* Es decir, el referido estatuto no impide continuar con el proceso judicial cuando ocurran las siguientes eventualidades: (1) el acreedor asistió en la vista de mediación, mientras que el deudor no compareció; (2) ambas partes asistieron a la audiencia y cumplieron con los requisitos de ley, pero no lograron un acuerdo; o (3) el deudor incumplió los acuerdos contraídos durante el proceso de mediación. *Íd.*

Expuesta la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

**III.**

En el presente caso, la señora González Rodríguez planteó como primer señalamiento de error que el Foro Primario erró al dictar sentencia sumaria a favor de DLJ, sin atender los hechos materiales expuestos en su oposición a la moción de sentencia sumaria. Como segundo señalamiento de error, la apelante alegó que el TPI incidió al omitir los hechos materiales adicionales que solicitó conforme a lo dispuesto en la Regla 43.1 de Procedimiento Civil, *supra*, R. 43.1.

Como cuestión de umbral, nos corresponde realizar la revisión *de novo* de la sentencia sumaria objeto de este recurso. En tal ejercicio, debemos subrayar que la apelante incumplió sustancialmente con los requisitos de la Regla 36 (c) de Procedimiento Civil, *supra*, R. 36 (c). Es imperativo recordar que la Regla 36 (c) de Procedimiento Civil, *supra*, R. 36 (c), dispone claramente que "la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en las alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente". Contrario a esta disposición, la señora González Rodríguez se limitó a alegar que a DLJ no le asistía la razón en los hechos que formuló como incontrovertidos y a presentar alegaciones

sin aportar evidencia o declaración jurada alguna que sustentara su posición. Sin embargo, es norma reiterada que la ausencia de prueba para refutar la evidencia presentada no conlleva a la concesión automática de una moción de sentencia sumaria. Pues, el tribunal debe estar claramente convencido de que tiene ante sí todos los hechos materiales de forma no controvertida, por lo que resulta innecesario celebrar un juicio plenario.

Ante ello, nos corresponde revisar si en este caso existen hechos materiales en controversia que impedían disponer del mismo sumariamente. Tras realizar un minucioso examen de la solicitud de sentencia sumaria, su oposición, así como los documentos en las que se fundamentaron, no apreciamos que existían hechos materiales controvertidos.

De la evidencia contenida en el expediente surge que el 9 de septiembre de 2010, la señora González Rodríguez otorgó un pagaré a favor de Popular Mortgage por la suma de $116,590.00. Para garantizar el referido pagaré, la apelante otorgó en garantía un inmueble mediante una hipoteca constituida por medio de la Escritura Núm. 447 del 9 de septiembre de 2010 ante el notario público Héctor M. Lúgaro Figueroa. Posteriormente, el 20 de agosto de 2012, la señora González Rodríguez y Popular Mortgage, Inc. otorgaron la Escritura Núm. 145 ante la notario público Sandra M. Lugo Andújar para la modificación y ampliación de la hipoteca a $118,182.70. Dicho pagaré se endosó al portador DLJ, entidad que lo adquirió en el curso normal de sus negocios conforme a declaración jurada que obra en el expediente.

No existía controversia en que la apelante incumplió con el pago de las mensualidades acordadas, razón por la cual DLJ declaró la cantidad adeudada como vencida, líquida y exigible y presentó la *Demanda* de epígrafe en cobro de dinero y ejecución de hipoteca. Tras la señora González Rodríguez recibir el descargo de la deuda personal

mediante un caso de quiebra en el Tribunal Federal, el apelado solamente podía cobrar su acreencia mediante el inmueble que la apelante otorgó como garantía hipotecaria. Asimismo, luego de que las partes participaron en un procedimiento de mediación compulsoria y de mitigación de pérdidas sin lograr un acuerdo, el Foro Primario continuó con el proceso judicial. Así las cosas, tras DLJ presentar una solicitud de sentencia sumaria debidamente fundamentada y el TPI no encontrar hechos materiales controvertidos, resolvió que la señora González Rodríguez adeudaba $111,730.22 de principal y otras sumas por el incumplimiento con el pago de las mensualidades de préstamo hipotecario, circunstancia que facultó a DLJ a reclamar la deuda mediante la presentación de la *Demanda*. Por ello, el Foro *a quo* declaró Ha Lugar la solicitud de sentencia sumaria del apelado y ordenó la ejecución de la sentencia mediante la venta en pública subasta del inmueble hipotecado.

Tras dicha relación de hechos incontrovertidos, nos corresponde revisar si el Foro Primario aplicó correctamente el derecho. Consideramos que el TPI no erró al resolver que DLJ, como tenedor de buena fe del pagaré hipotecario garantizado con el inmueble de la señora González Rodríguez, tenía la facultad de satisfacer su crédito vencido, mediante el cobro de dinero y la correspondiente ejecución hipotecaria. Al incoarse una causa de acción de ejecución hipotecaria, nuestro ordenamiento jurídico exigía que las partes participaran de un proceso de mediación compulsoria, con el objetivo de que el deudor pudiese retener su vivienda principal. La *Ley para Mediación Compulsoria, supra*, exige como requisito jurisdiccional que se celebrara una vista de mediación. Asimismo, el acreedor debía actuar de buena fe y notificar al deudor todas las alternativas que estaban disponibles para evitar la ejecución de su vivienda principal. Sin embargo, el aludido estatuto no le impone al acreedor la obligación de llegar a un acuerdo con el deudor.

En este caso, DLJ y la señora González Rodríguez participaron de un proceso de mediación compulsoria y realizaron esfuerzos de repago como parte de la alternativa de mitigación de pérdida. Empero, no lograron un acuerdo para finalizar el pleito. El TPI continuó con el proceso judicial y dictó sentencia a favor del apelado, tras no encontrar hechos materiales en controversia. En atención a lo anterior, determinamos que el TPI no cometió el primer señalamiento de error al dictar sentencia sumaria a favor de DLJ.

De otra parte, no tenía razón la señora González Rodríguez al indicar que el TPI debía relevar a las partes de su dictamen por ser nulo, ya que DLJ no le ofreció todas las alternativas de mitigación de pérdida. De la evidencia surgió que, entre los años 2018 al 2021, las partes participaron de un proceso de mediación compulsoria y de plan de mitigación de pérdida, en el que realizaron esfuerzos para lograr el pago de la deuda. El hecho de que la apelante no pudo satisfacer el plan de pago acordado entre la partes no significó que el proceso se vició de nulidad ni que se contravino el ordenamiento jurídico.

Cónsono con lo anterior, no tiene razón la apelante al plantear que el TPI estaba obligado a celebrar una vista de nulidad del procedimiento, de conformidad con la Regla 49.2 de Procedimiento Civil, *supra*, R. 49.2. Pues, es norma reiterada que no es mandatorio celebrar una vista de relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil, *supra*, R. 49.2, si de la faz de la petición es evidente que carece de méritos. Véase *Ortiz Serrano v. Ortiz Díaz, supra*. La señora González Rodríguez no presentó una razón válida, más allá de meramente alegar la nulidad del procedimiento, que ameritara la celebración de una vista para la presentación de prueba. A su vez, la mera alegación de que la señora González Rodríguez no revisó el pagaré original no fue suficiente para viciar de validez el proceso de ejecución hipotecaria.

Por último, en lo atinente al segundo señalamiento de error, resolvemos que no incidió el Foro Primario al denegar exponer determinaciones de hechos adicionales. Pues, reiteradamente se ha resuelto que el Foro *a quo* no tiene la obligación de formular determinaciones de hechos adicionales, de entender que no proceden. Véase *Carattini v. Collazo Syst. Analysis, Inc., supra.* Asimismo, el TPI no podía exponer determinaciones de hechos adicionales en contravención con las determinaciones previamente formuladas y debidamente probadas. Véase *Constructora Estelar v. Aut. Edif. Púb., supra.*

**IV.**

Por las razones que anteceden, se conforma la *Sentencia* dictada por el Foro Primario.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones